**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-20629

MICHAEL SPEED,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

(95-CV-4455)

May 12, 1998

Before JOLLY, WIENER, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner, Michael Speed, a state prisoner in Texas, pro se, appeals the district court's denial

of a writ of habeas corpus filed under 28 U.S.C. § 2254 and imposition of Fed.R.Civ.P. 11 sanctions

in the amount of $115. For the following reasons, we affirm the dismissal of the petition, but vacate

the order of sanctions.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

FACTS

After the commencement of his jury trial but prior to the closing of the State's case, Speed pleaded <u>nolo contendere</u> to aggravated robbery and was sentenced to a 45-year term of imprisonment in the Texas Department of Criminal Justice - Institutional Division. Speed did not file a direct appeal from his conviction or sentence. Rather, he filed a state application for a writ of habeas corpus, which was denied without written order by the Texas Court of Criminal Appeals. Speed then brought this federal petition for a writ of habeas corpus, alleging claims of (1) ineffective assistance of counsel; (2) breach of a plea agreement by the State; (3) involuntary waiver of his right to appeal; and (4) unwanted court-appointed counsel. He also requested that he be allowed to proceed <u>in forma pauperis</u> ("IFP") in the district court. The district court ordered that Speed pay the $5 filing fee.

The respondent conceded in its motion for summary judgment that Speed exhausted state remedies. However, in denying habeas relief and granting the respondent's motion to dismiss, the district court judge stated the following:

> This entire case has been fabricated by the petitioner. Not only does he misread the letters that he attached to his petition, but he makes false statements to the Court under oath. It is a crime to swear falsely to a court.

The district court determined that Speed's petition was frivolous and brought solely to harass the state and trial counsel and to waste the time of the court. The court sanctioned Speed the balance of the usual filing fee, $115, and ordered that the Texas Department of Criminal Justice deduct this amount from his account at the rate of 80 per cent of the current funds in the account and 80 per cent of any new funds added until the full sum is collected.

2

In the district court, Speed filed a request for leave to appeal IFP. The district court denied Speed a certificate of probable cause ("CPC") and denied Speed leave to proceed IFP.[1] Speed then filed in this Court a motion for IFP, a motion for CPC, which this court construed as a motion for a certificate of appealability ("COA"), a motion to dispense with the requirement of posting a security bond, and a motion to stay a portion of the district court's final judgment pending appeal. We denied Speed's IFP motion without prejudice to his right to file within thirty days a new motion for IFP which complied with Fed. R. App. P. 24(a) and ordered the remainder of Speed's motions held in abeyance. We ultimately granted Speed leave to proceed IFP and granted a COA on the issue of whether the district court abused its discretion in imposing a $115 monetary sanction; we denied a COA as to Speed's other claims. We denied Speed's motions to stay a portion of the district court's final judgment pending appeal and to dispense with the requirement of posting a security bond.

DISCUSSION

According to the Supreme Court's decision in Lindh v. Murphy, ___ U.S. ___, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997), the amendments to the habeas corpus statute made by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), were meant to apply only to those noncapital cases filed after AEDPA's enactment.[2]

---

[1]At the same time, Speed filed a notice of appeal. On remand from this Court, the district court determined that Speed's notice of appeal was deposited in the United States mail timely.

[2]We had previously held that AEDPA applies to all habeas petitions that were pending on April 24, 1996, the date on which the President signed the bill into law. See Drinkard v. Johnson, 97 F.3d 751, 764-66 (5th Cir. 1996), cert. denied, 117 S. Ct. 1114 (1997). This aspect of Drinkard was overruled by the Lindh decision. See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).

3

Thus, noncapital cases filed <u>before</u> AEDPA's effective date of April 24, 1996, are not subject to the provisions of AEDPA. Because Speed's habeas petition was filed prior to the enactment date of the AEDPA, the claims should be analyzed under pre-AEDPA law. <u>Green</u>, 116 F.3d at 1120.

As noted above, this court issued a COA as to the issue of the district court's imposition of a $115 sanction. The standard for issuance of a COA is the same as the standard for issuance of a CPC. <u>See id.</u> Prior to the AEDPA, a habeas petitioner was required to obtain a CPC in order to file an appeal. <u>See</u> 28 U.S.C. § 2253 (1995). Under pre-AEDPA law, an appeal following issuance of a CPC is not limited to issues which have been determined to be non-frivolous. <u>Sherman v. Scott</u>, 62 F.3d 136, 138-39 (5th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 816, 1279 (1996). A grant of a CPC on a single issue allows this Court to review the entire judgment rendered by the district court and all issues raised by the petitioner in the district court. <u>Id.</u> Therefore, our grant of a COA should be construed as a grant of CPC, which renders all of Speed's issues reviewable.

I.      Sanctions

Speed argues that the district court abused its discretion in sanctioning him $115. He contends that the petition was his first federal habeas corpus petition; he genuinely believes that the issues presented are meritorious; and he was proceeding <u>pro se</u>. The respondent argues that because Speed's claims were frivolous, the district court's failure to allow Speed an opportunity to show cause why sanctions should not be imposed is at most harmless error.

Rule 11 provides that, if after notice and a reasonable opportunity to respond, a court determines that a paper is signed in violation of the rule, "the court . . . may impose an appropriate sanction . . . ." Fed. R. Civ. P. 11(c). Rule 11 is applicable to petitions filed under § 2254. <u>Anderson</u>

4

v. Butler, 886 F.2d 111, 114 (5th Cir. 1989).  We review a district court's decision to invoke Rule 11 and accompanying sanctions under an abuse of discretion standard.  Childs v. State Mut. Auto. Ins. Co., 29 F.3d 1018, 1023 (5th Cir. 1994).  In reviewing sanctions against vexatious or harassing litigants, we inquire whether (1) a prior warning has been given; (2) the sanction exceeds the bound of discretion under Fifth Circuit jurisprudence; and (3) the sanction is the least severe, adequate sanction.  Mendoza v. Lynaugh, 989 F.2d 191, 195-97 (5th Cir. 1993).

The district  court did not warn Speed prior to imposing sanctions or give him an opportunity to respond.  Further, the district court did not elaborate on its determinations that Speed "fabricated" the "entire case" or made "false statements to the Court under oath."  Neither is it apparent from the record that Speed "swore falsely" to the district court.  Finally, the sanction meeted out to Speed was far from the "least severe, adequate sanction."  Rather, "dismissal where appropriate for writ abuse ordinarily should be adequate without resort to Rule 11."  Anderson, 886 F.2d at 114.

In reviewing the district court's imposition of Rule 11 sanctions we must also inquire "whether the [petitioner's] contention is utterly frivolous and whether it is asserted with no good faith belief in its validity."  In making such an inquiry, the fact "that the prisoner is without counsel is relevant."  Id.

Finally, sanctions are used in only the most egregious situations and "rarely outside the presentation of successive writs."  Id.  As Speed contends, this habeas petition was his first federal habeas pet ition.  In light of the foregoing analysis, the sanctions must be vacated.  Speed was not represented by counsel.  The district court had not previously ruled on the merits of the claims in his petition and there is nothing to suggest that the district court had insufficient control without resorting to Rule 11.  See id.

II.     Ineffective Assistance of Counsel

Speed argues that the district court erred in granting the respondent's motion for summary judgment on his ineffective assistance of counsel claims. He claims that his attorney (1) failed to ascertain and advise him as to the terms of his plea, (2) failed to object to the State's recommendation of a life sentence, (3) erred in advising him to waive his right to appeal, (4) failed to seek an out-of-time appeal, and (5) failed to advise him of the State's pre-trial plea offer.

In order to establish that his attorney performed ineffectively, Speed must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficiency he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

In the context of guilty pleas, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Speed "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." Id. A failure to establish either deficient performance or prejudice defeats the claim. Strickland, 466 U.S. at 697.

A.   Failure to Ascertain and Advise Speed as to the Terms of His Plea

Speed argues that his counsel was ineffective because he advised him that if he pleaded guilty rather than going to trial, the State "would not recommend punishment." He also contends that his counsel was ineffective for failing to inform him that his plea would be an "open plea" or one "without any terms."

The record reflects that during Speed's October 27, 1992, jury trial, after the State presented the testimony of two witnesses, Speed entered a plea of nolo contendere to the charge of aggravated robbery. Prior to the court's acceptance of Speed's plea, Speed signed a written waiver in which he consented, among other things, "to the Court assessing punishment in such a manner as the Court feels justified under the evidence." The waiver also contained a waiver-of-right-to-appeal provision.

The court informed Speed that the range of punishment for his offense was a term of imprisonment of not more than 99 years nor less than five years and that he could receive a life term of imprisonment. Speed acknowledged that he understood the range of punishment. Further, counsel for Speed and for the State, in Speed's presence, told the court that no plea bargain existed. Speed responded affirmatively to the question of whether he was entering the plea with the intention of having the court determine the proper punishment. Thereafter, the court accepted the plea.

Following a presentence investigation, the court assessed Speed's punishment. Prior to the court's assessment of punishment, the State asked the court to assess a life term of imprisonment. Speed's counsel did not object to the State's recommended punishment.

In a letter to Speed from his counsel dated September 30, 1992, counsel informed Speed as follows: "[s]o far the district attorney has indicated that nothing you could do would be of any help to him and that the case would be tried to a jury unless you wanted to plead guilty with no

7

recommended punishment and let the judge do the sentencing." In a letter dated February 18, 1993, to Speed from his counsel, counsel stated:

> Your plea was taken as an "open plea." In fact you could have gotten life; in fact the district attorney had sought a maximum penalty. You in fact did not get the maximum. You did not even get the 50 years which was recommended at pre-trial. Rather than being punished for insisting on trial, you were rewarded with a shorter sentence.

In a letter dated May 18, 1993, to the State Bar of Texas from Speed's counsel wrote the following in an apparent attempt to respond to Speed's complaints:

> [D]ismissing the jury and allowing the judge to pass sentence was a wise move for Mr. Speed. A plea bargain of 50 years in TDC has been offered by the district attorney. Colorado County has a reputation of giving large sentences on jury punishments. I believe that a maximum sentence of life was a very real possibility. The judge gave him some what [sic] of a break with a 45 year sentence.

As the district court observed, the record does not reflect the existence of a plea agreement. Nor does it reflect an agreement by the State not to recommend a particular punishment to the court. The reference in counsel's letter of September 30, 1992, to a guilty plea "with no recommended punishment" was in the context of a guilty plea prior to trial, and Speed pleaded nolo contendere only after the jury trial commenced. Prior to the court's acceptance of Speed's plea, Speed's counsel and counsel for the State, in Speed's presence, told the court that no plea bargain existed. Even assuming Speed's counsel was deficient in failing to ascertain that the State would recommend a particular punishment to the court at sentencing, Speed has not demonstrated that he would not have pleaded guilty if he had known that the State would recommend a particular sentence to the court.

  B.  <u>Failure to Object to the State's Recommendation of a Life Sentence</u>

8

Speed contends that his counsel was ineffective for failing to object to the State's recommendation at sentencing that he receive a life term of imprisonment. In Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993), this court held that "[i]n order to avoid turning Strickland into an automatic rule of reversal in the non-capital sentencing context . . . a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh."

The court sentenced Speed to a 45-year term of imprisonment, and Speed does not contest that he could have received a 99-year or a life term of imprisonment. As discussed above, the record does not reflect the existence of an agreement by the State not to recommend a specific punishment. Thus, it is unlikely that an objection by Speed's counsel to the punishment recommendation would have been sustained. Thus, Speed has not demonstrated a reasonable probability that had his counsel objected to the State's recommendation, his sentence would have been significantly less harsh.

C. Advice to Waive His Right to Appeal Prior to Judgment and Sentence

Speed argues that his counsel was ineffective for advising him to waive his right to appeal prior to judgment and sentence. He notes that he was sentenced on November 23, 1992, but that on October 27, 1992, he signed a pre-trial waiver of his right to appeal. He contends that the waiver of his right to appeal his judgment of conviction and sentence at the time of the guilty plea was unconstitutional.

The waiver signed by Speed prior to the court's acceptance of his plea of nolo contendere provided, among other things, that Speed "after being duly sentenced," waived his right to appeal "including rights of appeal as to any pre-trial matters and competency of defense counsel." Under

9

Texas law, a waiver of the right to appeal is not binding when made after judgment but prior to sentence. See Means v. State, 552 S.W.2d 166, 167 n.1 (Tex. Crim. App. 1977).

At sentencing, the court admonished Speed that he had "certain appeal rights in this case in the event that [he felt] something wrong was done about [his] case or that [his] rights [had] been violated." The court also informed Speed that upon a proper motion, an attorney could be appointed to represent him. Even assuming deficient performance in advising Speed to waive his right to appeal prior to sentencing, Speed has not demonstrated prejudice with respect to this claim.

D.      Failure to Seek an Out-Of-Time Appeal

Speed contends that his counsel was ineffective for failing to seek an out-of-time appeal on his behalf. He argues that a letter from counsel attached to his state habeas application suggests that he wished to appeal his conviction. However, a letter from Speed's counsel to the State Bar of Texas provides, among other things, the following:

> Since Mr. Speed chose to bail out of his jury trial and plead guilty to "no recommended sentence from the prosecutor," he was legally barred from a regular appeal without the trial judge's permission.

A criminal defendant has a constitutional right to effective assistance of counsel in his first appeal as of right. See Evitts v. Lucey, 469 U.S. 387, 393-95 (1985). The failure of counsel to perfect an appeal upon request of his client may constitute ineffective assistance of counsel. See United States v. Gipson, 985 F.2d 212, 215 (5th Cir. 1993).

The standard Strickland ineffective-assistance-of-counsel analysis is not performed when there has been actual or constructive complete denial of any assistance of appellate counsel. Sharp v. Puckett, 930 F.2d 450, 451-52 (5th Cir. 1991). "In the context of the loss of appellate rights,

10

prejudice occurs where a defendant relies upon his attorney's unprofessional errors, resulting in the denial of his right to appeal." Gipson, 985 F.2d at 215. "If a petitioner can prove that the ineffective assistance of counsel denied him the right to appeal, then he need not further establish -- as a prerequisite to habeas relief -- that he had some chance of success on appeal." Id. In such cases, prejudice is presumed and neither the Strickland prejudice test nor the harmless-error test is appropriate. Sharp, 930 F.2d at 452; but cf. Gipson, 985 F.2d at 215-17 (applying a Strickland prejudice analysis to the review of a case in which it was established that the convicted defendant informed his retained counsel of his desire to appeal and the attorney failed to perfect an appeal).

Speed argues on appeal, as he did in the district court, that he informed his counsel of his desire to appeal but that counsel did not seek an out-of-time appeal. He does not argue, however, that he informed his counsel of his desire to appeal within the time for filing a direct criminal appeal, only that his counsel should have sought an out-of-time appeal. At sentencing, the court informed Speed that upon a proper motion, an attorney could be appointed to represent him on appeal. Speed does not argue that he sought such an appointment. Thus, Speed was not actually or constructively denied the assistance of appellate counsel.

### E. Failure to Advise Speed of the State's Pre-Trial Offer

In the district court, Speed also argued that his counsel was ineffective for failing to advise him that the State offered him a fifty-year term of imprisonment at the pre-trial hearing. Although Speed lists this as an issue raised in the district court in his appellate brief, he provides no argument as to this issue. Nor has he addressed this issue in his supplemental brief. Therefore, the issue has been abandoned. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

11

III.    Plea Agreement

Speed asserts that he does not wish to abandon on appeal the claim that the State breached the plea agreement. He notes that even if no such agreement existed, his counsel led him to believe that an agreement existed. Speed apparently contends that the State breached the agreement not to recommend a specific sentence when it recommended a life term of imprisonment. As discussed above, Speed has not demonstrated the existence of an agreement by the State not to recommend punishment to the court. Therefore, we find that this claim lacks merit

IV.    Pre-Trial Waiver of Right to Appeal

In the district court, and outside the context of an ineffective-assistance-of-counsel claim, Speed argued that his pre-trial waiver of his right to appeal was involuntarily made. Although Speed lists this as an issue in his appellate brief, he argues the issue in the context of an ineffective-assistance-of-counsel claim only. Speed has not addressed this issue in his supplemental brief. Thus, Speed is not entitled to habeas relief on this claim as he has abandoned it. See id.

V.    Unwanted Court-Appointed Counsel

In the district court, Speed raised the issue that the trial court erred in forcing him to accept court-appointed counsel. Although Speed lists this as an issue in his appellate brief, because he provides no argument on this issue, we find that it too has been abandoned on appeal. See id.

We AFFIRM the district court's dismissal of the petition for writ of habeas corpus and VACATE its imposition of sanctions.

12